IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CORBEAU USA, LLC, a Utah Limited Liability Co.,<br><br>    Plaintiff,<br><br>vs.<br><br>CORBEAU SEATS, LTD, an England Limited Liability Co.,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM FOR FRAUD<br><br><br><br>Case No. 2:04-CV-626 TS |

Plaintiff Corbeau USA brings this action for trademark infringement based upon its assertion that it is the owner of all U.S. trademark rights to the use of the logo CORBEAU GT SEATS and the word mark CORBEAU. Defendant Corbeau Seats disputes Plaintiffs' claim of ownership to the logo and word mark and counterclaims against Corbeau USA and its President Spencer Bond (Counterclaim Defendants), for fraud. Counterclaim Defendants move for summary judgment on the fraud counterclaim on two grounds: First, that it is time barred by the statute of limitations and, second, that there is an absence of

1

evidence on the elements of fraud. The Court finds that the fraud counterclaim is time barred and will grant the Counterclaim Defendants' Motion for Summary Judgment.

"Summary judgment is proper only if there is no genuine issue of material fact for determination, and the moving party is entitled to judgment as a matter of law."[1] The Court reviews "the entire record on summary judgment . . . in the light most favorable to the party opposing summary judgment."[2] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way and is 'material' when 'it is essential to the proper disposition of the claim.'"[3] "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."[4]

Counterclaim Defendants contend that the fraud counterclaim is time barred because Corbeau Seats had knowledge in 1999 of the facts that gave rise to its counterclaim. In support, Counterclaim Defendants submit evidence of the following: Corbeau Seats manufactures automobile seats and has its business located in the United

---

[1] *Durham v. Herbert Olbrich GMBH & Co.*, 404 F.3d 1249, 1250 (10th Cir. 2005) (quoting *Riley v. Brown & Root, Inc.,* 896 F.2d 474, 476 (10th Cir. 1990)).

[2] *Id.*

[3] *Haynes v. Level 3 Commc'ns, LLC,* 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[4] *Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1146 (10th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Kingdom. Colin and Annette Folwelll own Corbeau Seats.  Among the purchasers of its seats was Corbeau USA.

In 1999, Corbeau Seats' Purchasing Director wrote an internal memorandum (Folwell Memorandum), dated June 3, 1999:

> After viewing the Corbeau USA web-site, we have a clearer understanding of why sales have fallen so much in recent times.  There are a variety of different seats listed that have not been supplied by us, details as follows:
>
>> A.    9 different types of "sport seat" recliners, presumably Mexican in origin.
>
> * * *
>
>> E.    Clubman.  The Internet page shows an old shot of Corbeau originated Clubman seats (with Flock badges) but since none have been bought for one year we can only assume they are coming from another source.  Additional Yellow Clubman seats are listed which we have never supplied.  If Spencer [Bond] is buying Clubman seats with Corbeau logo on would this be illegal if he has registered the name in the USA?
>
> America should be one of Corbeau seats biggest markets.  The fact that it is not and is in decline for us can be directly attributed to the fact that a large proportion of the "Corbeau Seats" sold by our US "importer" have not originated here.  This has naturally strangled our sales.  No container has been bought for a year.  . . .
>
> If things carry on heading in their current direction we could have the absurd situation where our USA distributor is selling all Corbeau seats from other companies and we are seeing none of the business. . . .
>
> . . . However, what has occurred recently has been an ugly turnaround away from what we have always considered to be a mutual venture. . . . [5]

---

[5] Docket No. 54, Ex. E.

3

Attached to the Folwell Memorandum were copies of pages from Corbeau USA's website showing models of Clubman style seats bearing a Corbeau logo but available in yellow, a color of seat never supplied to Corbeau USA by Corbeau Seats.

After reading the Folwell Memorandum, Colin Folwell then personally viewed the pictures on the Corbeau USA website, including some of seats bearing the Corbeau logo. Mr. Folwell testified in his deposition that all of the seats mentioned in the Folwell Memo were "Asian knockoffs"[6]—meaning they were not manufactured by Corbeau Seats.

Colin Folwell then flew to the United States to visit Corbeau USA's business operations in Utah.  When Mr. Folwell met with Corbeau USA's president, Spencer Bond, in Utah in 1999, Mr. Folwell didn't "think [he] was allowed to look too far."  He further testified that he wanted to give Mr. Bond the benefit of the doubt.[7]  In his deposition, Mr. Folwell testified:

> Q.   . . . Between June 1999, when you saw these seats manufactured elsewhere on the website and March 2001, because of this trust you have just described, did you received assurances from Corbeau USA and Spencer Bond that they would stop doing that or that they were not doing it or anything like that?
>
> A.   No, I just believed him.[8]

---

[6] *Id.*, Ex. B, at 92.

[7] Docket No. 59, Choi Decl. Ex. 7 (Colin Folwell Dep.), at 104 ("I knew [Spencer Bond's] father.  The whole thing – a lot of the things were based on trust, and I didn't make any moves on Spencer [Bond] because I wanted to give him the benefit of the doubt.").

[8] *Id.* at 105.

4

Thus, Counterclaim Defendants present evidence that in June 1999, Corbeau Seats knew or should have known in 1999 that Corbeau USA was selling seats with the Corbeau logo that were not obtained from Corbeau Seats. This same evidence shows that Corbeau Seats knew or should have known in June 1999 that Corbeau USA was not exclusively distributing Corbeau products obtained from Corbeau Seats, but was instead distributing seats bearing the Corbeau brand that were obtained from third parties.

The Utah statute of limitations for a fraud claim provides: "An action may be brought within three years . . . for relief on the grounds of fraud . . . ; except that the cause of action in such case does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake."[9]

The counterclaim for fraud was filed on May 3, 2005, well after three years following Corbeau Seats' discovery that Corbeau USA was selling Corbeau branded seats that it had not received from Corbeau Seats. Corbeau Seats attempts to avoid the statute of limitations by arguing: (1) Counterclaim Defendants concealed the fraudulent activities regarding distributorship; (2) the discovery rule tolls the running of the limitations period; (3) Corbeau USA's actions were a continuing tort; (4) the Utah statute of limitations does not apply; and (5) additional discovery is needed.

"The discovery rule operates to toll a statute of limitations 'until the discovery of facts forming the basis for the cause of action.' There are two types of discovery rules: a

---

[9] Utah Code Ann. § 78-12-26(3).

'statutory discovery rule' and an 'equitable discovery rule.'"[10] The equitable discovery rule does not apply where a statute of limitations, like the one applicable to fraud claims, by its own terms, already contains a discovery rule.[11] Thus, Corbeau Seats' argument regarding equitable tolling[12] is inapposite to this case.  Further, even if the doctrine of equitable tolling did apply where the limitations statute contains its own discovery rule, the Court would find that it does not apply in this case because, as discussed below, Corbeau Seats has not met its burden of showing an issue of fact on the alleged concealment of admissible evidence. Instead, the Court applies the statutory discovery rule to the fraud counterclaim.

Interpreting the discovery rule contained in the statute of limitations for fraud, the Utah Supreme Court notes that it "is widely interpreted as tolling the running of the limitations period until a plaintiff 'either discover[s] or should have discovered his or her cause of action.'"[13]

> A plaintiff is deemed to have discovered his action when he has actual knowledge of the fraud "or by reasonable diligence and inquiry should know, the relevant facts of the fraud perpetrated against him." We have particularly emphasized the importance of the diligence requirement, stating that "[a] party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge" and that "[a] party is required to make inquiry if his findings would prompt further investigation." In other words, if a party has knowledge of some underlying

---

[10]*Moore v. Smith*, 158 P.3d 562, 570-71 (Utah App. 2007) (quoting *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ ¶ 21, 24, 108 P.3d 741).

[11]*Id.*

[12]Corbeau Seats Br. at 20-23.

[13]*Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 811 (Utah 2007) (quoting *Carson*, 2005 UT at ¶21, 108 P.3d 741)).

facts, then that party must reasonably investigate potential causes of action because the limitations period will run.[14]

In the present case, Corbeau Seats argues that Mr. Bond on behalf of Corbeau USA, actively concealed the fact of its position that it was not Corbeau Seats' exclusive distributor and "lied" about its purchases from third parties.

Because Counterclaim Defendants have met their burden of coming forward with evidence in support of their position on the statute of limitations, Corbeau Seats must oppose summary judgment with "specific facts showing that there is a genuine issue for trial."[15] It must meet this burden by admissible evidence.[16] Thus, although the form of the evidence need not be admissible, its content or substance must be.[17] Thus, "at summary judgment courts should disregard inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form."[18]

> The requirement that the substance of the evidence must be admissible is not only explicit in Rule 56, which provides that "[s]upporting and opposing affidavits shall . . . set forth such facts as would be admissible in evidence," but also implicit in the court's role at the summary judgment stage. To determine whether genuine issues of material fact make a jury trial

---

[14]*Id.* (quoting *Baldwin v. Burton*, 850 P.2d 1188, 1196-97 and n.43 (Utah 1993)).

[15]Fed. R. Civ. P. 56(e).

[16]*Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004) ("The nonmoving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact.").

[17]*Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (holding evidence in the form of an affidavit may be sufficient to oppose summary judgment).

[18]*Id.* (emphasis in original).

necessary, a court necessarily may consider only the evidence that would be available to the jury.[19]

For this reason, the Court must disregard inadmissible hearsay statements contained in deposition testimony as well as in other documents. The evidence that Corbeau Seats relies on to oppose summary judgment is either irrelevant,[20] or hearsay. The proffered hearsay includes the deposition testimony of Annette Folwell as to what Colin Folwell told her Bond had told him during his 1999 trip to Corbeau USA,[21] an accusation in an agenda prepared by Corbeau Seats of items it wanted to discuss at a 2004 settlement conference with Bond,[22] and unattributed information contained in a September 1998 magazine article.[23]

Because Corbeau Seats has not come forward with admissible evidence in support of its allegation that the facts were concealed from it, the Court finds that the statute of limitations began to run in 1999 when it learned that Corbeau USA was offering a seat with the Corbeau brand that was not purchased through Corbeau Seats. As the Utah Supreme Court has previously held, a party such as Corbeau Seats, "who has opportunity of

---

[19] *Id.* (quoting Fed. R. Civ. P. 56(e)).

[20] *E.g.* Docket No. 54, Exs. L and K, 1994 and 1996 communication from Mr. Bond to Corbeau Seats are not relevant to the beginning of the running of the limitations period because they pre-date Corbeau Seats' 1999 discovery that Corbeau USA was offering seats carrying the Corbeau brand that had not been purchased from Corbeau Seats.

[21] Docket No. 59 Choi Decl. Ex. 8 at 61-62.

[22] *Id.*, Ex. 17 and Ex. 8, A, Folwell deposition (explaining that document is agenda of items to be discussed, not notes of what happened at the meeting).

[23] Docket No. 54, Ex. J (September 1998 article).

knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge." If, as Corbeau Seats proffers, it subsequently obtained additional proof of the extent of Corbeau USA's purchases of seats with the Corbeau logo from other companies, it nonetheless had already received notice in 1999 that such was occurring.

Corbeau Seats' remaining arguments need only be discussed briefly. Corbeau Seats contends that the Corbeau USA's actions were a continuing tort and, therefore, the statute of limitations has not run. However, the case it cites, *Walker Drug Co, Inc. v. LaSal Oil Co.*,[24] involves doctrines applicable to nuisance and trespass causes of action, not fraud. In *Tiberi v. Cigna Corp.*,[25] a case applying the law of New Mexico, the Tenth Circuit held that the continuing wrong doctrine could be applied to the fraud claim where there was evidence that the Defendant had provided assurances of one course of action when it had already considered another course of action.[26] In the present case, there is no admissible evidence of such reassurances after March 1999—when the statute of limitations began to run. Therefore, even assuming that Utah courts would apply the continuing wrong doctrine to a fraud claim, there is no material issue of fact as to whether the doctrine applies to this case; it does not.

As to Corbeau Seats' argument that the Utah statute of limitations does not apply, the Court agrees with Defendant that the Court need not determine if it should apply the

---

[24] 902 P.2d 1229 (Utah 1995).

[25] 89 F.3d 1423 (10th Cir. 1996).

[26] *Id*. at 1431-32.

statute of limitations from the laws of the United Kingdom because even under a six-year statute of limitations, this case would be untimely filed.

Finally, Corbeau Seats seeks to delay ruling on the Motion until after it has an opportunity to obtain additional discovery under Fed. R. Civ. P. 56(f). However, its request is not properly supported with an affidavit as required by Rule 56(f).[27]  Because Corbeau Seats has not complied with Rule 56(f), it is not entitled to delay resolution of this Motion until it has conducted additional discovery.

In conclusion, Corbeau USA and Bond have met their burden of showing that there is no genuine issue of material fact on the statute of limitations issue.  It is therefore

ORDERED that Counterclaim Defendants Corbeau USA's and Bond's Motion for Summary Judgment on Amended Counterclaim for Fraud (Docket No. 53) is GRANTED. It is further

ORDERED that judgment shall enter in favor of Counterclaim Defendants and against Counterclaim Plaintiff on the Amended Counterclaim.  Judgment will enter at the conclusion of this case.

DATED July 2, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[27] *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993) (explaining when affidavits properly support a Rule 56(f) motion).